UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIRLENE FOAT LEITH,<br><br>    Plaintiff,<br><br>v.<br><br>MIDDLESEX & SOMERSET COUNTY PROSECUTOR'S ,<br><br>    Defendants. | Civil Action No. 15-7227 (FLW)<br><br><br>OPINION |

**WOLFSON, United States District Judge:**

### I.   INTRODUCTION

This matter has been opened to the Court by Plaintiff's Complaint asserting claims under 42 U.S.C. § 1983, against the Middlesex County Prosecutor's Office, the Somerset County Prosecutor's Office, the New Brunswick Police Department, Lieutenant Steven Weitz, Detective Dean Dakin, and four unidentified John Doe Defendants, for alleged violations of her constitutional rights in connection with her arrest on October 2, 2013, and subsequent conviction on drug charges.  The Court previously granted Plaintiff's application to proceed *in forma pauperis*.  At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  The Court concludes that Plaintiff's Fourth Amendment claims shall proceed at this time against the individual Defendants, and the remaining claims shall be dismissed for the reasons stated in this Opinion.

1

## II.     FACTUAL BACKGROUND

Plaintiff's Complaint begins by stating that "Sgt. Steve Weitz of the Middlesex County Prosecutor's Officer and Sgt. Demeo of the Somerset County Prosecutor's Office task force that would include Inv. E. Geipel, Inv. Craig Marchak and Dean Dakin of the New Brunswick Police Department all engaged in a conspiracy to cover up a false arrest to protect a confidential reliable informant Leonard Denson." (ECF No. 1, Complaint at 5.) The Complaint alleges that on October 4, 2013 at 7:30 pm, Defendant Detective Steve Weitz "claim[ed] to have received a tip from a reliable confidential informant that a person name [sic] Shirly was in New Brunswick in the area of Suydam St. between Throop and Commercial Ave."[1] (ECF No. 1, Complaint at 6.) It is not clear from the Complaint whether this confidential informant is Leonard Denson or a different individual. The confidential informant "said Shirly would be in the New Brunswick an [sic] in possession of a [sic] unknown amount of cocaine and heroin that would be in a hide away stash can." (*Id.*) After allegedly receiving this information, Sgt. Weitz and his taskforce went to the area to conduct surveillance. (*Id.*)

The Complaint also alleges that, at around 7:40 pm, Plaintiff had exited a store on 77 Throop after buying some items, including lottery tickets, a can of soda, and six bottles of

---

[1]     These facts appear to be taken from a police report attached to the Complaint, but it is not clear whether Plaintiff disputes (or concedes that) that Sgt. Weitz received a tip from a reliable confidential informant. The reproduction of the police report, which is difficult to read and appears to have been redacted in part, also states that the confidential informant gave a description matching Plaintiff's general appearance. (*See* ECF No. 1-1, at page 4.) As a general matter, the Court notes that Plaintiff's Complaint mixes several narrative accounts of her arrest on October 4, 2013, including (1) her own version of events, (2) a version of events taken from the police report, and (3) witness reports and testimony about the incident. Because her Complaint is drafted from competing versions of the same incident, it is difficult to determine which facts that she alleges in support of her claims and which facts she disputes as inaccurate.

perfume.  (*Id.*)  The items were in a small black bag.  (*Id.*)  As she was talking on the phone to her boyfriend and walking up Suydam toward Commercial Ave, the bag holding the perfume bottles broke, causing Plaintiff to stop at 108 Suydam.  Two individuals, identified in the Complaint as Leonard Denson and his sister Tanya Denson, were also at that location.  The Complaint alleges that "according to neighbors [sic] testimony" these two individuals had been "openly dealing drugs" at that location all day (*id.*), but it is not clear from the Complaint whether the neighbors reported this information to police prior to Plaintiff's arrest.

   The Complaint next alleges that Plaintiff placed her soda, the bottles of perfume, and her pocketbook on the retaining wall, and Tanya Denson asked her if she needed any help.  (*Id.*)  As Plaintiff began transferring the perfume to her pocketbook, she heard sirens and screeching tires, and was "crabed [sic] and immediately handcuffed to Tanya Denson."  When she attempted to tell her boyfriend that she was being "detained," Defendant Detective Dean Dakin allegedly told her "shut the fuck up black bitch."  (*Id.*) According to the Complaint, witnesses "testified" that Leonard Denson threw a black bag and ran up Suydam before tripping and falling.  He was then arrested by police.  (ECF No. 1-1, Complaint at 8.)  The Complaint alleges that as Leonard Denson was being arrested, Plaintiff was being uncuffed from Tayna Denson and placed in a police car, "long before any evidence of any crime was found."  (*Id.*)  Detective Dakin also allegedly went through Plaintiff's pocketbook.  After he was finished, he threw his hands in the air and shook his head to indicate "no."  (*Id.*)  The Complaint further alleges that police found bags of heroin right where Leonard Denson was arrested.  (*Id.*) The Complaint also states that Leonard Denson directed police to "the stash can in a black bag that [Plaintiff] was supposed [sic] to be in possession of."  (*Id.*)

Plaintiff was then transported to the New Brunswick Police Station and held for six hours. She was subsequently transferred to Middlesex County Jail on drug charges. (*Id.*) She remained in jail for three days until posting bail. (*Id.*) The Complaint also alleges that Plaintiff's attorney subsequently told her that Detective Dakin told the attorney that he witnessed Plaintiff selling 70 decks of heroin to someone just before her arrest. Later in the Complaint, however, Plaintiff states that "no one saw [Plaintiff] engaged in any unlawful activity before she was grabbed handcuffed and put in the police car." (*Id.*) The Complaint also states that Sgt. Weitz committed perjury at Plaintiff's suppression hearings and at trial (ECF No. 1, Complaint at page 4), and that Detective Dakin "testified in front of the grand jury that Leonard [Denson] confessed to just buying a large quantity of heroin from [Plaintiff] just prior to his arrest[,] and on there [sic] video he clearly doesn't' say that." (ECF No. 1-1, Complaint at 9.)

According to the Complaint, Tayna Denson was released at the scene and Leonard Denson was charged with resisting arrest by flight but was not charged with any drug crimes. (*Id.* at 8-9.) Plaintiff was "indicted and convicted by a jury and is currently serving a ten year sentence with five years with out [sic] parole at [EMCF.]" (*Id.* at 8.) In the relief section of her Complaint, Plaintiff seeks $25,000,000 in damages for the alleged violations of her constitutional rights. She also asks for the following relief: "that if Defendants are found guilty my case be immediately reviewed and the case dismissed with prejudice." (ECF No. 1, at pages 6-7.)

### III.   STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a

claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties.  *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Such pleadings are "held to less

strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, *pro se* litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV. ANALYSIS

The Court construes Plaintiff's Complaint to raise a number of claims pursuant to 42 U.S.C. § 1983. Specifically, she alleges a § 1983 conspiracy to violate her constitutional rights, Fourth Amendment claims related to her detention, arrest, and imprisonment, and § 1983 claims for malicious prosecution and giving false testimony. Plaintiff, however, sued certain entities that are not amenable to suit under § 1983 and has also requested relief that is not available in a § 1983 action. As such, before addressing the merits of her substantive claims, the Court begins by addressing these deficiencies in her Complaint.

### a. The Court Dismisses Entities Not Amenable to Suit Under § 1983

From the outset, the Court will dismiss with prejudice the Middlesex and Somerset County Prosecutor Offices and the New Brunswick Police Department, as these entities are not amenable to suit under 42 U.S.C. § 1983.

It is well established that a prosecutor's office is not a "person" amenable to suit under § 1983. *See Gordon v. Berkeley Twp. Police*, No. 10–5061, 2011 WL 2580473, at *4 (D.N.J. June 27, 2011) (holding that a "Prosecutor's Office" is not a "person" within the meaning of a Section 1983 suit) (citations omitted); *Baker v. Lewis*, No. 10–3438, 2010 WL 4117140, at *1 n. 1 (D.N.J. Oct.19, 2010) (same). Additionally, the Prosecutors Office is immune from suit under the Eleventh Amendment to the extent that it is an entity that could even potentially be sued under § 1983. *See Woodyard v. County of Essex*, 514 Fed. App'x 177, 182 (3d Cir. Mar. 5, 2013) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989) (*en banc*)).[2] As such, Plaintiff's claims against the Middlesex and Somerset County Prosecutor's Office are dismissed with prejudice.

In New Jersey, a municipal police department is not an entity separate from the municipality. *See* N.J. Stat. Ann. § 40A: 14-118 (municipal police department is "an executive and enforcement function of municipal government"). As such, the New Brunswick Police Department is not a proper defendant in this action. *See Padilla v. Twp. of Cherry Hill*, 110 F. Appx. 272, 278 (3d Cir. 2004) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.") (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)); *Aycox v. City of Elizabeth*, 2009 U.S. Dist. LEXIS 111345, at *7 (D.N.J. Dec. 1, 2009) ("Because the Police Department is merely an arm of the Township,

---

[2] In determining whether immunity applies, a court examines: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 1978 (3d Cir. 2008).

Plaintiff's claim against the department cannot stand."); *Godley v. Newark Police Dep't*, 2007 U.S. Dist. LEXIS 5718, at *8 (D.N.J. Jan. 26, 2007) (same).

As a court in this District recently explained:

> A New Jersey police department is not an independent entity with the capacity to sue and be sued, but only "an executive and enforcement function of municipal government." N.J.S.A. 40A:14–118. The case law under Section 1983 uniformly holds that the proper defendant is therefore the municipality itself, not the police department. *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (per curiam; not precedential) ("We further agree with the District Court that the police department was not a proper party to this action. Although local governmental units may constitute 'persons' against whom suit may be lodged under 42 U.S.C. § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.") (citation omitted). *See also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997) (Court "treat[s] the municipality and its police department as a single entity for purposes of section 1983 liability"); *Michaels v. State of New Jersey*, 955 F. Supp. 315, 329 n. 1 (D.N.J. 1996).

*Rivera v. Zwiegle*, No. 13–3024, 2014 WL 6991954, at *3 (D.N.J. Dec. 09, 2014). Here, Plaintiff has not sued the municipality under a *Monell* theory of liability and cannot maintain a separate § 1983 claims against the New Brunswick Police Department.[3] As such, the claims against the New Brunswick Police Department are dismissed with prejudice.

### b. Plaintiff Cannot Invalidate her Conviction through a § 1983 Suit

Because Plaintiff appears to request the invalidation of her conviction on drug charges as a form of relief, the Court next explains the intersection between habeas corpus petitions and

---

[3] In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a local governmental entity may be sued under 42 U.S.C. § 1983. Although a local government may not be held liable based strictly on a theory of *respondeat superior*, it may be held liable where an official governmental "policy or custom" causes the claimed injury. *Id.* at 690–94. Here, Plaintiff has not provided facts to suggest that the incident at issue occurred as a result of a municipal policy or custom.

civil rights claims. Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004). In general, "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus ... [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action." *Id.*

It is well established that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). Thus, state prisoners "must use habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (U.S. 2005).[4]

Here, Plaintiff's seeks monetary damages <u>and</u> the invalidation of her conviction. With respect to the latter, she states the following: "that if Defendants are found guilty my case be immediately reviewed and the case dismissed with prejudice." (ECF No. 1, Complaint at pages

---

[4] Likewise, a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence. *Id.* (*citing Heck v. Humphrey*, 512 U.S. 477). The Supreme Court held in *Heck v. Humphrey* that an action under § 1983 seeking "damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under § 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-7; *see also Wilkinson*, 544 U.S. at 80. Summarizing the interplay between habeas and § 1983 claims, the Supreme Court has explained that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson*, 544 U.S. 74, 81–82 (emphasis in original); *see also Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (explaining same).

6-7.) Plaintiff's request to have her conviction invalidated by the Court is barred because that judicial determination "necessarily impl[y] the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81. This type of relief, if sought in federal court, may only be brought through a habeas petition after exhausting all available state court remedies.[5] As such, the Court finds that Plaintiff's request to have her conviction invalidated by the Court may not be brought pursuant to § 1983 and that claim for relief is dismissed without prejudice to her filing of a habeas petition after exhausting her state court remedies. The Court now turns to her substantive claims for relief.

### c. Civil Rights Conspiracy

The Court will dismiss without prejudice Plaintiff's conspiracy claim under § 1983 for failure to state a claim for relief under 28 U.S.C. §§ 1915(e)(2) and 1915A. Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Plaintiff's Complaint alleges only that "Sgt. Steve Weitz of the

---

[5] A state prisoner may not filed a petition for habeas corpus in federal court until she has exhausted her state remedies. 28 U.S.C. § 2254(b) and (c). This requirement serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("Comity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."). "The exhaustion rule also serves the secondary purpose of facilitating the creation of a complete factual record to aid the federal courts in their review." *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995). It is not clear from Plaintiff's Complaint whether she has exhausted any or all of her claims in state court, and the Court expresses no opinion about the validity of those claims at this time.

Middlesex County Prosecutor's Officer and Sgt. Demeo of the Somerset County Prosecutor's Office task force that would include Inv. E. Geipel, Inv. Craig Marchak and Dean Dakin of the New Brunswick Police Department all engaged in a conspiracy to cover up a false arrest to protect a confidential reliable informant Leonard Denson." (ECF No. 1, Complaint at 5.) The Complaint, however, fails to allege facts showing that there was an agreement and concerted action by these Defendants to cover up Plaintiff's allegedly false arrest. To the extent Plaintiff can provide facts to overcome these deficiencies, Plaintiff may file an Amended Complaint with respect to this claim within 30 days.

### d. Fourth Amendment Claims

The Court construes Plaintiff to allege in her Complaint that Defendants Weitz, Dakin, and the four John Doe Defendants illegally detained and/or arrested her on October 4, 2013. [6] She also appears to allege her bag/pocketbook was illegal searched by Defendant Dakin during her detention/arrest.[7]

---

[6] It is not clear whether Plaintiff seeks to sue Sgt. Demeo, Inv. E. Geipel, and Inv. Craig Marchak for violations of her Fourth Amendment rights. She does not list these individuals in the caption of the Complaint as Defendants and but alleges in the Complaint that (1) they engaged in a conspiracy to falsely arrest her, and that (2) they "arrived on the scene" after she was handcuffed and Leonard Denson was arrested. (ECF No. 1-1, Complaint at 2.) As explained in the previous section, the Court will dismiss Plaintiff's conspiracy claim without prejudice and grant Plaintiff leave to file an Amended Complaint with respect to this claim. At that time, Plaintiff is free to name Sgt. Demeo, Inv. E. Geipel, and Inv. Craig Marchak as Defendants and provide facts describing how their conduct allegedly violated her Fourth Amendment rights.

[7] In this regard, the Court notes that claims for false arrest and illegal search and seizure do not necessarily implicate the validity of a conviction or sentence pursuant to *Heck*. *See Jackman v. Smith*, 190 F. App'x 108, 109-10 (3d Cir. 2006) ("Claims found not to be barred by Heck include unreasonable search and seizure, excessive force, coercion, and often false arrest and false imprisonment."). Compare *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 5 (3d Cir. 1998) ("claims for false arrest and false imprisonment are not the type of claims contemplated by the court in *Heck* which necessarily implicate the validity of a conviction or sentence.") with *Gibson v. Superintendent*, 411 F.3d 427, 451-52 (3d Cir. 2005) (finding Heck rule applies because only evidence supporting conviction was found pursuant to constitutional violation that

The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons... against unreasonable" seizures. U.S. CONST. amend. IV. The Fourth Amendment prohibits arrests made without probable cause. *See Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000); *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012); *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). To succeed on a claim for false arrest, a plaintiff must allege the following two elements: (1) there was an arrest; and (2) the arrest was made without probable cause. *Id.* "'Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995)); *see also Mina tee v. Phila. Police Dep't*, 502 F. App'x 225, 228 (3d Cir. 2012) (citation omitted). "In assessing the presence of probable cause, a court must determine the fact pattern the officer encountered and, in light of that, whether the arresting officer had probable cause to believe that a criminal offense has been or is being committed." *Snell v. City of York*, 564 F.3d 659, 671 (3d Cir. 2009) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)) (internal quotation marks omitted).

The Fourth Amendment also governs investigatory stops, known as "*Terry* stops." A seizure generally "must be effectuated with a warrant based on probable cause." *United States v.*

---

was subject of plaintiff s § 1983 claim). A district court must make a fact-based inquiry to determine whether a successful § 1983 action would undermine the validity of a conviction or sentence. *See Gibson*, 411 F.3d at 451. Although it is apparent from the Complaint that Plaintiff was convicted by a jury on the drug charges, there is no information at the screening stage to make the fact-based inquiry as to whether success on her Fourth Amendment claims would necessarily invalidate her conviction or sentence.

*Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). Pursuant to the warrant requirement exception established by *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968), however, an officer who has "a reasonable, articulable suspicion that criminal activity is afoot" may initiate "a brief, investigatory stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30). The "reasonable suspicion" standard governing *Terry* stops is less exacting than probable cause both in terms of the "quantity or content" and reliability of information needed to support the stop. *Alabama v. White*, 496 U.S. 325, 330 (1990); *see also* "*United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) ("Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, . . . the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.") (internal citations and quotations omitted). Under the reasonable suspicion standard, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion." *Terry*, 392 U.S. at 21; *see also Payano v. City of Camden*, No. CV 13-2528 (NLH), 2016 WL 386040, at *2 (D.N.J. Feb. 1, 2016) (explaining same). Notably, however, "a *Terry* stop that is supported by reasonable suspicion at the outset may nonetheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution." *Johnson*, 592 F.3d at 451 (citing *United States v. Rickus*, 737 F.2d 360, 366 (3d Cir. 1984)); *see also Terry*, 392 U.S. at 28 ("The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all.").

  Here, it is not clear whether Plaintiff is alleging in her Complaint that she was subjected to an improper *Terry* stop, that she was arrested without probable cause, or both. As explained by the Third Circuit, "[i]n certain circumstances, it can be difficult to distinguish between a

*Terry* stop, which requires only reasonable suspicion, and a *de facto* arrest, which must be supported by probable cause." *United States v. Johnson*, 592 F.3d 442, 447-48 (3d Cir. 2010) (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985) (observing that case law "may in some instances create difficult line-drawing problems in distinguishing an investigative stop from a *de facto* arrest")). According to Plaintiff, she heard sirens and screeching tires, and was "crabed [sic] and immediately handcuffed to Tanya Denson." Plaintiff further alleges that she was placed in a police car at the scene, "long before any evidence of any crime was found." (*Id.*) Although development of the factual record may generate new considerations bearing on the Court's analysis, the facts alleged in Plaintiff's Complaint at least suggest that the conduct of the task force members exceeded a mere *Terry* stop.[8] The Court will therefore permit her Fourth Amendment claims based on her unlawful detention/false arrest to proceed at this time against the defendants identified in the caption and need not determine the exact contours of those claims at this early stage.

"[W]here the police lack probable cause to make an arrest, the arrestee has a claim under [section] 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir.1995); *Adams v. Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011). A false imprisonment claim is also grounded in the Fourth Amendment's guarantee against unreasonable seizures. *Groman,* 47 F.3d at 636 (citations omitted). Notably, a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest refers only to the period of incarceration lasting from the moment of arrest until the first legal action, e.g., an

---

[8] The Third Circuit has held that the "'use of guns and handcuffs must be justified by the circumstances' that authorize an investigative detention in the first place." *Johnson*, 592 F.3d at 452-53 (quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995). The Court cannot make this determination from the facts alleged in the Complaint.

arraignment, *see Groman*, 47 F.3d at 636, and the damages recoverable under such claims are limited to those ensuing from the period of detention until the first legal action. *See Connelly v. Wren*, No. 12–2123, 2013 WL 74233, *4 (D.N.J. Jan. 4, 2013). Because the Court will permit Plaintiff's false arrest claims to proceed, the Court will likewise permit her false imprisonment claim to proceed as well.

Plaintiff also alleges sufficient facts to challenge the search of pocketbook, which she allegedly placed on the retaining wall prior to her detention by the taskforce. *See, e.g., United States v. Myers*, 308 F.3d 251, 267 (3d Cir. 2002) (citations omitted) (finding that search of bag that was three feet away from the arrestee while the arrestee was handcuffed, lying face down on the floor, and was "covered" by two armed police officers was not within the arrestee's immediate control and possession and thus a search of the bag incident to arrest was not justified). *See also United States v. Bennett*, No. 08–535, 2010 WL 1427593, at *6 (E.D. Pa. Apr.8, 2010) (holding that the search of the defendant's backpack was not a valid search incident to arrest because by the time defendant's bag was searched he had been subdued, handcuffed, and surrounded by police; thus, the bag was no longer within his immediate control).

In sum, the Court will permit Plaintiff's Fourth Amendment claims as described in this section of the Opinion to proceed at this time against Defendants Weitz, Dakin, and the four John Doe Defendants.

### e. Plaintiff's Malicious Prosecution and False Testimony Claims

The Court will dismiss without prejudice Plaintiff's claim for malicious prosecution for failure to allege favorable termination. To state a claim for malicious prosecution under § 1983, a plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered [a] deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphi*a, 582 F.3d 447, 461 (3d Cir. 2009). The Court will dismiss the malicious prosecution claim without prejudice for failure to allege favorable termination.  Furthermore, to the extent Plaintiff seeks damages for malicious prosecution, she has no cause of action under 42 U.S.C. § 1983 absent a showing that her conviction has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *See Nicholas v. Heffner*, 228 F. App'x 139, 141 (3d Cir. 2007) (citing *Heck*, 512 U.S. at 486–487); *see also Kossler v. Crisanti*, 564 F.3d 181, 190 (3d Cir. 2009) (explaining that the court need not apply *Heck's* test to Plaintiff's malicious prosecution claim because such a claim under § 1983 is barred where the Plaintiff does not plead favorable termination); *United States v. Miller*, 197 F.3d 644, 652 n.7 (3d Cir. 1999) ("When a plaintiff files a § 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice.").

In connection with her malicious prosecution claim, the Court also finds Plaintiff may not maintain a cause of action under § 1983 based on Defendants' allegedly false testimony at trial or before the grand jury.  A trial witness, including a police officer, sued under § 1983 has absolute immunity with respect to any claim based on the witness's testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).  Without this rule, witnesses would be reluctant to testify and "might be inclined to "shade [their] testimony in favor of the potential plaintiff [for] fear of subsequent liability." *Id.* at 332–33.  The *Briscoe* rule applies both at the trial and pre-trial stages of litigation.  *See Rehberg v. Paulk*, 132 S.Ct. 1497, 1505 (grand jury proceedings).   As such,

any § 1983 claims arising from the allegedly false testimony by Defendants Weitz and Dakin are dismissed with prejudice.

## V.     CONCLUSION

For the reasons stated in this Opinion, Plaintiff's § 1983 claims against the Middlesex and Somerset County Prosecutor's Office and the New Brunswick Police Department are dismissed with prejudice. Plaintiff's request to have her conviction invalidated by the Court may not be brought pursuant to § 1983 and is denied without prejudice to her filing of a habeas petition after exhausting her state court remedies. Plaintiff's § 1983 conspiracy claims are dismissed without prejudice. Her Fourth Amendment claims shall proceed at this time against Defendants Weitz, Dakin, and the four John Doe Defendants. Plaintiff's § 1983 claim for malicious prosecution is dismissed without prejudice for failure to allege favorable termination. Plaintiff's claims arising from allegedly false testimony by Defendants Weitz and Dakin is dismissed with prejudice. An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Date: July 8, 2016