**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| SHIRLENE FOAT LEITH, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 15-7227 (FLW) (LHG) |
| | : | |
| v. | : | |
| | : | |
| LIEUTENANT STEVE WEITZ et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

_____ :

**FREDA L. WOLFSON, U.S.D.J.**

**I.     INTRODUCTION**

Plaintiff, Shirlene Foat Leith ("Foat Leith"), is a state prisoner, presently incarcerated at the Edna Mahan Correctional Facility, in Clinton, New Jersey. She is proceeding *pro se* with an Amended Complaint asserting claims under 42 U.S.C. § 1983. (ECF No. 18.) Presently before the Court is a motion by Foat Leith for default judgment against defendant Detective Dean Dakin ("Dakin"), (ECF No. 28), a motion by Dakin to vacate an entry of default and to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(2), (4), (5), and (6), (ECF No. 30), a motion by defendant Lieutenant Steve Weitz ("Weitz") to dismiss the Amended Complaint under Rule 12(b)(6), (ECF No. 45), a request by Foat Leith that the Court construes as a motion to disqualify Weitz's counsel, (ECF No. 48 at 5), and a motion by Foat Leith for appointment of *pro bono* counsel, (ECF No. 50). For the following reasons, the entry of default against Dakin is vacated, the motion for default judgment is denied, the motions for dismissal are granted in part, insofar as the claims for malicious prosecution and conspiracy are dismissed, and the remaining portions of the motions are denied, likewise, the request for disqualification of counsel is denied, and the motion for appointment of *pro bono* counsel is denied. Furthermore, the Court grants

Dakin and Weitz (collectively, "Defendants") leave to file motions for summary judgment on the issue of whether Foat Leith's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II.     BACKGROUND

### A.  Underlying Circumstances

The facts underlying this case are contested, but Foat Leith alleges that they occurred as follows.  She represents that, at around 7:40 p.m., on October 4, 2013, she was walking down Suydam Street, in New Brunswick, New Jersey, having just purchased several bottles of perfume, when her shopping bag broke, spilling the contents on the ground.  (Compl., ECF No. 1, ¶ 6.)  Foat Leith explains that she placed her black pocket book and other belongings on a wall to clean up the contents of her shopping bag.  (*Id.*)  Foat Leith asserts that non-party Tanya Denson, then approached, identified a gray pocket book sitting on the same wall as hers, and offered to help Foat Leith pick up her things.  (*Id.*)  As Tanya Denson and Foat Leith stood there, she alleges that officers with the New Brunswick Police Department, including Detective Dakin, arrived in a vehicle and placed them both in handcuffs.  (*Id.*)

Foat Leith alleges that she was then placed in a police car, but that when her boyfriend arrived around the same time, he saw Dakin go through Foat Leith's pocket book and find nothing of interest.  (ECF No. 1-1, at 1.)  Meanwhile, other police officers also detained Tanya Denson's brother, non-party Leonard Denson, who apparently began running away when police arrived.  (*Id.*)  Foat Leith claims that Tanya Denson later admitted that Leonard Denson had 20 "decks" of heroin in his hand and another 50 in his anal cavity.  (*Id.*)  Foat Leith alleges that Leonard Denson then directed the officers to a "stash can" in a black bag, which contained additional drugs.  (*Id.*)  Tanya Denson was released, but Foat Leith was taken to the Middlesex

County Jail and charged with dealing drugs. (*Id.*) Foat Leith was ultimately convicted and sentenced to ten years in prison, with five years of parole ineligibility. (*Id.*)

**B. The Complaint**

Foat Leith commenced this action on October 1, 2015 and alleged claims for violations of her constitutional rights, under 42 U.S.C. § 1983, against the Middlesex County Prosecutor's Office, the Somerset County Prosecutor's Office, the New Brunswick Police Department, Weitz, and Dakin. (*See* ECF Nos. 1 & 1-1.) Foat Leith alleges that all of the defendants participated in a conspiracy to subject her to malicious prosecution. (ECF No. 1 ¶ 7.) She specifically alleges that Weitz conspired to charge her without supporting evidence, tampered with the evidence in her case, and perjured himself during trial and pretrial hearings. (*Id.* ¶ 4(b).) She asserts that Dakin falsely arrested her, verbally abused her, and participated in the malicious-prosecution conspiracy by providing false testimony to the grand jury. (*Id.* ¶ 4(c).) She insists that no one saw her engaged in any unlawful conduct prior to her arrest, that her fingerprints were not found on any of the evidence, and that she was carrying a large amount of money to use as a deposit for a new apartment the next day. (ECF No. 1-1 at 1–2.) As relief, Foat Leith sought compensatory damages of $25 million, punitive damages of $5 million, and the review and dismissal of her criminal case. (ECF No. 1 ¶ 7.)

This Court granted Foat Leith leave to proceed *in forma pauperis*, but Magistrate Judge Lois H. Goodman terminated an initial motion for appointment of *pro bono* counsel as premature.[1] (ECF Nos. 1-2, 2, 3, & 4.) Upon conducting an initial screening of the Complaint, under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court construed it as asserting claims for conspiracy, Fourth Amendment violations, malicious prosecution, and giving false testimony.

---

[1] Judge Goodman also denied a second motion for appointment of *pro bono* counsel as premature. (*See* ECF Nos. 10 & 25.)

(Op., ECF No. 5, at 6.)  The Court then dismissed with prejudice all claims against the Middlesex County Prosecutor's Office, the Somerset County Prosecutor's Office, and the New Brunswick Police Department, as they are not susceptible to suit under § 1983.  (*Id.* at 6–8.)  The Court further dismissed Foat Leith's claims to the extent they sought to invalidate her conviction, noting that such relief may only be sought in federal court by way of a petition for writ of *habeas corpus*.  (*Id.* at 8–9.)  Examining the Complaint's remaining substantive allegations, the Court dismissed, for failure to state a claim, the claims for conspiracy, malicious prosecution, and presenting false testimony, but permitted the Fourth Amendment claims, for unlawful detention or false arrest, false imprisonment, and unlawful search, to proceed.  (*Id.* at 10–17; Order, ECF No. 6.)  The Court granted Foat Leith leave to amend those claims that were dismissed for failure to state a claim.  (ECF No. 5 at 10–17; ECF No. 6.)

The clerk issued Foat Leith copies of U.S. Marshals Service Form 285 for service of process.  (ECF No. 7).  Foat Leith submitted completed forms to the Marshals Service on July 25, 2016, and the Court issued a summons for each defendant the same day.  (ECF Nos. 8 & 9.)  The Marshals Service filed Process Receipt and Return forms on August 8, 2016, indicating that both Weitz and Dakin were served on August 3, 2016.  (ECF Nos. 12 & 13.)  On August 12, 2016, however, the Middlesex County Prosecutor's Office filed a letter with the Court indicating that it had erroneously accepted service on behalf of Weitz, as he had previously retired.  (ECF No. 16.)  After employing procedures to inform the Marshal's Service of Weitz's home address, proper service was eventually completed on June 20, 2017.  (*See* ECF Nos. 20, 22, 23, 24, 32, 33, & 35.)

## C.  The Amended Complaint

Meanwhile, Foat Leith filed an Amended Complaint, presently the operative pleading, on September 7, 2016, impleading as defendants Weitz and Dakin, as well as "John Doe's to Be Name Later."  (Am. Compl., ECF No. 18.)  The Amended Complaint alleges that Weitz

> [f]acilitated a conspiracy to charge me with crimes he new [sic] i did not commit by tampering with evidence at the crime scene to frame me and to bloster [sic] the case to cover his crimes[;] made up the story that he saw me throw a black bag when all the other detective said i did not move[;] had me arrested with out any knowledge a crime was committed or about to be committed.

(*Id.* ¶ 4(b).)  She claims that Dakin

> arrested me with out any knowledge a crime had been commited [sic][;] told me to shut the fuck up black bitch when I told my friend I was being detained[;] had me removed from the crime scene in handcuffs with out any other justifiable reason to violate my constitutional rights afforded me in the U.S. Constitution.

(*Id.* ¶ 4(c) (capitalization rectified).)  Foat Leith asserts that there must have been a conspiracy to charge her because various witnesses saw Leonard Denson throw a bag to the ground as he ran from police and otherwise contradicted police testimony during her trial, and because "Weitz knew she could not defend her self with her past."  (*Id.* ¶ 6.)  Foat Leith seeks $10 million in compensatory damages, unspecified punitive damages, and that she be given "her day in court so that [Weitz] and [Dakin] can be held accountable for the unjustifiable criminal babaric [sic] behavior they participated in."  (*Id.* ¶ 7.)  Foat Leith included with her Amended Complaint several investigation reports generated by the Office of the Public Defender, which summarize interviews with witnesses of her arrest.  (*Id.* Exs.)

## D.  Subsequent Procedure and Motion Practice

On March 20, 2017, as Dakin had not yet entered an appearance in this case, Foat Leith filed a request for entry of default against him, which was entered on March 27, 2017.  (ECF No.

26.)  Foat Leith then filed, on June 2, 2017, a motion for default judgment against Dakin in the

amount of $100,000, plus interest and costs. [2]  (ECF No. 28.)  Shortly thereafter, Dakin filed an

opposition and a cross-motion to vacate the entry of default against him, asserting that he had

never been properly served with the Summons and Complaint.  (ECF Nos. 30 & 34.)  Dakin

further sought dismissal of the action for improper service of process, under Federal Rule of

Civil Procedure 12(b)(2), (4), and (5), and for failure to state a claim, under Rule 12(b)(6).  (ECF

Nos. 30 & 34.)

On September 20, 2017, Judge Goodman *sua sponte* appointed Foat Leith *pro bono*

counsel for the sole purpose of representing her during a settlement conference.  (ECF No. 41.)

An unsuccessful telephonic settlement conference occurred on October 30, 2017, and Foat

Leith's limited *pro bono* counsel thereafter withdrew representation.  (ECF No. 47.)

Meanwhile, on October 16, 2017, defendant Weitz also filed a motion to dismiss the

Amended Complaint for failure to state a claim, under Rule 12(b)(6).  (ECF No. 45.)  Foat Leith

filed an opposition to Weitz's dismissal motion, in which she also requested "a hearing for the

attorney general to recuse themselves from representing Steven Weitz as we plan to call this

office as a witness."  (ECF No. 48).

Thereafter, Foat Leith additionally filed a motion for the appointment of *pro bono*

counsel.  (ECF No. 50.)  Dakin and Weitz both oppose the appointment of *pro bono* counsel.

(ECF Nos. 51 & 52.)

### III.  MOTIONS CONCERNING DAKIN'S DEFAULT

The Court first addresses Dakin's motion to vacate the entry of default against him and

Foat Leith's motion for default judgment.  Under Federal Rule of Civil Procedure 55, the Court

---

[2]  For the sake of clarity, the litigants' arguments concerning the various pending motions are
outlined in conjunction with the Court's analysis.

"may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c); *see also Mrs. Ressler's Food Prods. v. KZY Logistics, LLC*, 675 F. App'x 136, 139 (3d Cir. 2017). In considering whether to vacate default, a court should consider (1) whether the plaintiff will be prejudiced by a vacatur of default, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's culpable conduct led to the entry of default. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *see also Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 459 (3d Cir. 2011). Vacatur of a mere entry of default requires a less substantial showing than vacatur of a default judgment. *See Feliciano*, 691 F.2d at 656.

Dakin asserts that, while default was entered against him on March 27, 2017, he had never received proper service of process and did not learn of the action until June 8, 2017. (ECF No. 34 at 3–4.) He alleges that the Summons and Complaint intended for him was erroneously served upon the Middlesex County Prosecutor's Office, instead of his employer, the New Brunswick Police Department. (*Id.*) Dakin argues that Foat Leith will suffer no prejudice from vacatur of the default, that he has a meritorious defense, as the action should be barred by *Heck v. Humphrey*, and that he was not culpable for the default. In fact, Dakin claims that he filed his motion to vacate shortly after learning the case exited. (*Id.* at 5–8.)

Dakin's argument that the Summons and Complaint were served upon the wrong office is contradicted by the Process Receipt and Return filed by the Marshals Service, which indicates that service was to be made upon the New Brunswick Police Department and that, on August 3, 2016, the Summons and Complaint was served on a "Lt. Goldeski, badge #4231."[3] (ECF No.

---

[3] The Court notes that the Process Receipt and Return listed the Middlesex County Prosecutor's Task Force in a section intended for "special instructions or other information" including "Alternate Addresses." (*See* ECF No. 13.) The Court further notes, however, that the Process Receipt and Return for Weitz, which did specify service at the Middlesex County Prosecutor's Office, reports that service occurred on the same date upon an "Agent Daniel Muntone." (*See* ECF No. 12.)

13.)  Nonetheless, vacatur of the entry of default still appears warranted.  The case is still in its early stages—there has been no discovery and no defendant has yet filed an answer—thus indicating that Foat Leith will suffer little or no prejudice by permitting Dakin to join the litigation.  Indeed, that the Amended Complaint lists as additional defendants "John Doe's to Be Name Later" suggests that she may be contemplating adding new defendants to the case herself.  Furthermore, Dakin does assert a potentially meritorious defense, namely the argument that the case is barred by *Heck v. Humphrey*.  Dakin's role in his apparent failure to receive service of process is unclear, but he has acted promptly in seeking to vacate the entry of default.  Applying these considerations identified by the Third Circuit, *Feliciano*, 691 F.2d at 656, the Court finds good cause under Rule 55 to vacate the entry of default against Dakin.  As a result, Foat Leith's motion for default judgment is denied.

## IV.    THE DISMISSAL MOTIONS

### A.  Dismissal for Improper Service of Process

Dakin argues that lack of proper service of the Summons and Complaint upon him requires dismissal under Federal Rule of Civil Procedure 12(b)(2), (4), and (5).  (ECF No. 34 at 8–12.)  Rule 12(b)(2) permits dismissal of claims against a defendant when personal jurisdiction has not been properly established over that defendant.  Fed R. Civ. P. 12(b)(2).  Proper service of process is a prerequisite to the Court's exercise of personal jurisdiction over a defendant.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  Rule 12(b)(4) and (5) permits dismissal for insufficient process or insufficient service of process.  Fed. R. Civ. P. 12(b)(4), (5).

As noted above, the factual basis relied upon by Dakin for seeking dismissal on this ground (*i.e.*, erroneous service of his Summons and Complaint upon the Prosecutor's Office rather than the Police Department) is refuted by information ascertained from the case's docket.

(*See* ECF No. 13.) As his argument for improper service has no factual support, there is no basis to conclude that service upon Dakin was defective, and the portion of Dakin's motion seeking dismissal for improper service is denied.

**B. Dismissal Standard Under Rule 12(b)(6)**

Both Dakin and Weitz also argue that Foat Leith's Amended Complaint must be dismissed for failure to state a claim, under Rule 12(b)(6). In resolving a motion to dismiss under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (per curiam). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### C. Claims Under 42 U.S.C. § 1983

As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### D. Failure to State a Fourth Amendment Claim

Dakin argues that Foat Leith's claims are conclusory and that she fails to plead facts showing that defendants lacked probable cause to arrest her. (ECF No. 34 at 9–10.) He urges that her assertion that no probable cause existed is refuted by her indictment and conviction and the fact that Foat Leith never appealed any probable-cause issue. (*Id.*)

While the Amended Complaint could benefit from some additional description of the underlying facts, the Court is cognizant of its obligation to construe *pro se* filings liberally. *See Haines,* 404 U.S. at 520. The Amended Complaint alleges that Defendants seized and subsequently detained Foat Leith without any knowledge that she was involved in criminal activity, and that they subsequently searched her pocket book. (ECF No. 18 ¶¶ 4(b), 4(c), 6.) As it did on its screening of Foat Leith's original Complaint, and for the same reasons, the Court finds that she has adequately stated claims under the Fourth Amendment for unlawful detention or false arrest, false imprisonment, and unlawful search. (*See* ECF No. 5 at 11–15.)

### E. Applicability of the *Heck* Bar to the Fourth Amendment Claims

In his motion to dismiss, Weitz argues that Foat Leith's Fourth Amendment claims must be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994), as their success would necessarily impugn the validity of her criminal conviction. (Br. in Supp., ECF No. 45-1, at 5–7.) Weitz explains that he testified at Foat Leith's criminal trial that he saw her remove a bag containing drugs from her pocket book, place it on a wall, and then throw it to the ground. (*Id.* at 6.) He contends that Foat Leith's conviction "was based primarily on Weitz's sworn testimony as to what he observed," and he thus suggests that successfully showing a lack of probable cause would inherently also invalidate her conviction. (*Id.* at 6–7.)

Dakin similarly argues that the Fourth Amendment claims are barred by *Heck* and that Foat Leith's failure to appeal the probable-cause issue during her criminal proceedings precludes her from now arguing that the Defendants lacked probable cause to arrest and detain her. (ECF No. 34 at 9–10.) Dakin also contends that Foat Leith has failed to show favorable termination of her underlying criminal proceeding. (*Id.* at 10.)

In *Heck*, the Supreme Court held that if a § 1983 claim seeks "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff may not recover without showing "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. The action may proceed, however, where, "even if successful, [it] will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." *Id.* at 487. The question in determining whether a claim should be dismissed as barred by *Heck* is thus whether the claim's success would "necessarily imply the invalidity of [the] conviction." *Id.* at 487. The Supreme Court explained that, while a claim should be dismissed if its success would negate an element of the criminal conviction, more attenuated claims like those "for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the section 1983 plaintiff's still-outstanding conviction," because such a claim would not necessarily invalidate the conviction. *See id.* at 486–87 nn. 6 & 7.

The Court of Appeals for the Third Circuit has indicated that courts considering whether § 1983 claims are *Heck* barred should undertake a fact-intensive inquiry as to each claim to determine whether its success would necessarily impugn the conviction's validity. *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 447–49 (3d Cir. 2005), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007); *see also Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 223–24 (3d Cir. 2016); *Priovolos v. FBI*, 632 F. App'x 58, 60 (3d Cir. 2015). "In situations where the evidence seized as a result of an unlawful

search or arrest was used to convict the defendant, district courts examine the factual circumstances to determine whether doctrines such as independent source, inevitable discovery, or harmless error would have permitted the introduction of the evidence." *Gibson*, 411 F.3d at 448–49; *see also Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) ("Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, . . . Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in *Heck* which necessarily implicate the validity of a conviction or sentence.").

Here, the Amended Complaint asserts that Weitz "made up a story that he saw [her] throw a black bag when all the other detective[s] said [she] did not move [and] had [her] arrested with out any knowledge a crime was committed or about to be committed." (ECF No. 18 ¶ 4(b).) It further asserts that Dakin "arrested [her] with out any knowledge a crime had been commited [sic]." (*Id.* ¶ 4(c).) As noted above, the Court construes the Amended Complaint as stating claims for Fourth Amendment violations related to Foat Leith's arrest and detention.

The Fourth Amendment guarantees a right not to be subject to unreasonable seizures. U.S. Const. amend. IV. A seizure occurs when a government official restrains a person's freedom of movement so that the person is not free to leave. *Brendlin v. California*, 551 U.S. 249, 254 (2007). A seizure is generally permissible only if it is supported by probable cause to believe the person has committed a crime. *Bailey v. United States*, 568 U.S. 186, 192 (2013). A claim for false arrest thus requires that the plaintiff show (1) an arrest and (2) that the arrest was made without probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Similarly, a claim for false imprisonment requires a showing that (1) the plaintiff was detained and (2) the detention was unlawful. *Id.* at 682–83. When a person is arrested without probable

cause, a claim for false imprisonment may be asserted as to the detention following that arrest. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017).

Weitz argues that his testimony that he observed Foat Leith place a black bag on a wall and then throw it onto a lawn both established the probable cause for her arrest and "was also crucial in establishing Plaintiff's custody and control of the bag containing the drugs." (ECF No. 45-1 at 6.) He thus asserts that Foat Leith's conviction "was based primarily on Weitz's sworn testimony as to what he observed that evening," and argues that this means that any success on a Fourth Amendment claim would necessarily impugn the validity of her conviction. (*Id.* at 6–7.)

While Weitz's testimony is clearly related both to the justification for the seizure and to the ultimate conviction, he fails to make a showing at this time that Foat Leith's success on her claims would *necessarily* impugn the validity of her conviction. Weitz asserts that his testimony was "crucial" to establishing Foat Leith's possession of drugs and that it was the "primary" basis for her conviction, but, without access to at least the trial transcript, the Court is unable to determine that conviction would have been impossible without such testimony. Dakin's arguments that probable cause is demonstrated by the indictment and conviction and that Foat Leith has failed to establish favorable termination of the criminal proceeding are similarly ineffective to establish that success on her Fourth Amendment claims would *necessarily* impugn her conviction.

Without a basis to determine that success on her claims would inherently contradict her conviction, the Court cannot presently dismiss Foat Leith's Fourth Amendment claims as barred by *Heck*. Defendants may, of course, raise this issue again in a properly filed and properly supported motion for summary judgment.

## F. Qualified Immunity

Weitz also argues that the Fourth Amendment claims must be dismissed on the basis of qualified immunity. (ECF No. 45-1 at 7–11.) He contends that Foat Leith has failed to show that any clearly established right was violated, since she has not identified cases finding Fourth Amendment violations with facts similar to those surrounding her arrest. (*Id.* at 9–11.) He also urges that his trial testimony "clearly establishes that there was probable cause to arrest [Foat Leith]," adding that she admitted that she had a black bag that she set on a wall and that the grand jury's indictment constitutes prima facie evidence of probable cause. (*Id.* at 9–10.)

In opposition, Foat Leith argues that she was not observed engaging in any illegal activity and that no other officer appeared to corroborate Weitz's testimony at her trial. (ECF No. 48 at 2–3, 4.) She urges that Leonard Denson ran away with drugs in his possession when the police arrived and that the bags he had matched those in the "stash can" that were attributed at trial to Foat Leith. (*Id.* at 3–4.) She contends that dismissal should not be granted as "there is enough objective evidence to bind this case over for trial." (*Id.* at 4 (capitalization rectified).)

"Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Under this doctrine, a government official is immune from claims for damages unless, interpreting the allegations most favorably to the plaintiff, they show (1) that the official violated the plaintiff's constitutional rights and (2) that the constitutional right violated was clearly established. *Id.* at 201; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."). A right is considered

clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). A right is thus clearly established where existing precedent has "'placed the statutory or constitutional question beyond debate,'" though this "'do[es] not require a case directly on point.'" *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). "[I]n an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004); *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

It is well established that a search or seizure must be justified from the start, and that the scope of search or seizure must be reasonably related to the underlying justification. *See Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). Thus, a police officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Accordingly, a person may bring a claim for false arrest or false imprisonment if that person was subjected to an arrest or detention that is not legally justified. *See James*, 700 F.3d at 680, 682–83.

Foat Leith's Amended Complaint alleges that Weitz "had [her] arrested with out any knowledge a crime was committed or about to be committed," (ECF No. 18 ¶ 4(b)), and, on a motion to dismiss, this factual allegation must be construed as true, *see Fowler*, 578 F.3d at 210. While the Court acknowledges Weitz's argument that there typically must be a case in which constitutional violations were found upon specifically similar circumstances, the cases he cited in support addressed largely what circumstances (generally presented on motions for summary judgment) may create probable cause or what conduct is permitted in the wake of finding

probable cause. *See White v. Pauly*, 137 S. Ct. 548, 549–53 (2017) (considering what circumstances justify use of deadly force); *Mullenix*, 136 S. Ct. at 308–12 (considering what circumstances in a high-speed chase justify use of deadly force); *Al-Kidd*, 563 U.S. at 741–42 (assessing novel use of material-witness warrants); *Culver v. Armstrong*, 832 F.3d 1213, 1218–20 (10th Cir. 2016) (considering whether substantial facts created probable cause for interference with peace officer); *Graham v. Gagnon*, 831 F.3d 176, 184–88 (4th Cir. 2016) (considering whether extensive facts established probable cause to suspect obstruction of justice). Unlike those cases, the facts underlying this one remain largely contested and otherwise unestablished, thus preventing, at this time, an assessment with the same level of granularity. While Weitz contends that Foat Leith was *in fact* engaged in conduct that created probable cause for arrest, this presents a credibility contest that cannot yet be resolved. The most specific question thus derivable from the Amended Complaint and Weitz's dismissal motion is thus simply whether a lawful warrantless arrest may occur of a pedestrian who has engaged in no conduct indicating unlawful activity. Accepting these allegations as true, such circumstances present the type of "obvious case" noted by the Supreme Court in *Brosseau*, which renders unnecessary the specific identification of a factually similar case in which rights violations were found. *See Brosseau*, 543 U.S. at 200. As such, the Court rejects Weitz's argument in this regard.

### G. Dismissal of Malicious-Prosecution Claim

Dakin argues that Foat Leith's malicious-prosecution claim must be dismissed as she has failed to show favorable termination of her underlying criminal matter. (ECF No. 34 at 10–11.) Weitz also contends that any malicious-prosecution claim, insofar as one is reasserted, should be dismissed. (ECF No. 45-1 at 6 n.2.) The Court dismissed without prejudice the malicious-prosecution claim in Foat Leith's original Complaint for failure to plead favorable termination of

her criminal charges.  (ECF No. 5 at 15–17.)  To the extent that Foat Leith's Amended Complaint seeks to re-assert a malicious-prosecution claim, that claim is again dismissed, as she has included no additional facts tending to show favorable termination.

## H.  Failure to State a Conspiracy Claim

Finally, Weitz argues that Foat Leith's attempt to plead a claim for conspiracy is purely conclusory.  (ECF No. 45-1 at 11–12.)  He contends that the Amended Complaint fails to show an underlying constitutional violation and fails to allege facts that would support finding the elements of a conspiracy:  agreement and concerted action.  (*Id.*)  Dakin similarly argues that the conspiracy claim must be dismissed for failure to state a claim.  (ECF No. 34 at 11–12.)

In opposition, Foat Leith urges that Weitz's testimony at her criminal trial was an "intentional well thought out fabricated claim."  (ECF No. 48 at 3 (capitalization rectified).)  She opines that Weitz "lied and abused his authority by knowingly fabricating the facts that led to [her] arrest and conviction."  (*Id.* at 4 (capitalization rectified).)

As recounted above, the Court previously dismissed, upon screening, the conspiracy claims Foat Leith alleged in her original Complaint for failure to allege facts showing an agreement and concerted action by the defendants.  (ECF No. 5 at 10–11; ECF No. 6.)  As the Court noted in that opinion, a § 1983 claim for civil-rights conspiracy must show a "meeting of the minds" with facts demonstrating agreement and concerted action.  *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008).  The conspiracy allegations in the Amended Complaint are again conclusory.  Foat Leith alleges simply that Weitz "facilitated a conspiracy to charge [her] with crimes he new [sic] I did not commit by tampering with evidence" and that her prosecution was "brought about by a conspiracy by all officers at the scene who chose to remain silent and not call [Weitz] out on his fabricated story."  (ECF No. 18 ¶¶ 4(b), 6.)  Foat Leith does

not specifically identify Dakin in relation to any alleged conspiracy.  (*See id.* ¶¶ 4(c), 6.)  As in the original Complaint, Foat Leith includes no factual allegations that support a claim for conspiracy, and the motions to dismiss will be granted as to this claim.

## I.  Request for Disqualification of Counsel

As part of her opposition papers, Foat Leith also makes a request for "a hearing for the attorney general to recuse themselves from representing [Weitz] as we plan to call this office as a witness."  (ECF No. 48 at 5.)  The Court treats this as an application to disqualify Weitz's counsel.

Courts generally disfavor motions to disqualify counsel, and "grant them only when absolutely necessary."  *Maldonado v. N.J. ex rel. Admin. Office of Courts*, 225 F.R.D. 120, 136–37 (D.N.J. 2004); *see also Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993).  The proponent of disqualification bears the burden of showing either that the counsel in question has violated the Rules of Professional Conduct or, otherwise that "sufficient doubt exists as to the propriety of the representation."  *Kaselaan & D'Angelo Assocs. v. D'Angelo*, 144 F.R.D. 235, 238 (D.N.J. 1992); *see also Dantinne v. Brown*, Civ. No. 17-0486 (JHR/JS), 2017 WL 2766167, at *2 (D.N.J. June 23, 2017).

Foat Leith seeks disqualification of the New Jersey Attorney General's Office on the basis that she wants "to call this office as a witness."  (ECF No. 48 at 5.)  New Jersey Rule of Professional Conduct 3.7 does generally preclude an attorney from appearing as an advocate "at a trial in which the lawyer is likely to be a necessary witness."  N.J. Rules of Prof'l Conduct r. 3.7 (2016).  Nevertheless, there is no indication that any employee of the Attorney General's Office could be called as a relevant witness, much less as a *necessary* witness.  Foat Leith makes no allegation that any member of that office participated in or otherwise witnessed any of the

events underlying this case.  Consequently, her request for a hearing regarding the recusal of the Attorney General's Office is denied.

## V. MOTION FOR APPOINTMENT OF *PRO BONO* COUNSEL

Generally, civil litigants have no constitutional or statutory right to counsel.  *See United States v. Zoebisch*, 586 F. App'x 852, 856 (3d Cir. 2014).  In some cases, the need for representation is great, and thus 28 U.S.C. § 1915(e)(1) grants district courts broad discretion to request the appointment of attorneys to represent indigent civil litigants in appropriate circumstances.  The Court recognizes, however, that "volunteer lawyer time is extremely valuable" and, for that reason, that "district courts should not request counsel . . . indiscriminately."  *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993).  The Court must bear in mind "the significant practical restraints on the district court's ability to appoint counsel:  . . . the lack of funding to pay appointed counsel[] and the limited supply of competent lawyers who are willing to undertake such representation without compensation."  *Id.*

When evaluating an application for the appointment of *pro bono* counsel, the Court assesses seven factors originally identified by the United States Court of Appeals for the Third Circuit in *Tabron v. Grace*, 6 F.3d 147:

1. the potential merit of the applicant's legal position;

2. the applicant's ability to present the case without counsel;

3. the complexity of the legal issues involved;

4. the extent of factual discovery and the applicant's ability to investigate and to comply with discovery rules;

5. the extent to which the case may turn on credibility determinations;

6. whether expert testimony will be needed; and

> 7. whether the applicant can afford paid counsel.

*See Pricaspian Dev. Corp. v. Martucci*, No. 11-1459, 2011 WL 2429315, at *2 (D.N.J. June 13, 2011) (citing *Tabron*, 6 F.3d at 155, 158); *Prudential Ins. Co. of Am. v. Dobson*, No. 08-3951, 2009 WL 115966, at *1–2 (D.N.J. Jan. 16, 2009) (same). A finding of potential merit of the applicant's arguments is a threshold determination that must be established before considering any other factors. *See Dobson*, 2009 WL 115966 at *2; *Protameen Chems., Inc. v. Chinchilla*, No. 05-3383, 2007 WL 174163, at *1 (D.N.J. Jan. 22, 2007).

In support of her motion for appointment of *pro bono* counsel, Foat Leith contends that her claims have arguable merit, that she cannot proficiently argue her claims, as she has no legal training, has only limited access to the prison law library, and cannot conduct meaningful investigations or subpoena relevant witnesses, that she cannot afford to retain private counsel, that her claims will involve credibility determinations, including the "[c]redibility of the jury," that she may require expert testimony, and that appointment of counsel to represent her would help limit proceedings to relevant issues. (Certif. in Supp., ECF No. 50-1, at 2.)

Dakin filed a lengthy brief in opposition to Foat Leith's motion for the appointment of counsel. (ECF No. 51.) He argues that Foat Leith's claims are barred by *Heck*, and thus lack arguable merit, which must be shown as a threshold for any consideration of a request for *pro bono* counsel. (*Id.* at 9–11.) Dakin argues that, even assuming arguable merit, the other *Tabron* factors weight against appointing *pro bono* counsel, pointing out that as Foat Leith has demonstrated an ability to present her case, that the case is not complex, and that it will likely not require significant factual investigation or expert testimony. (*Id.* at 11–15.)

Weitz filed a letter indicating his desire to join in Dakin's opposition to the motion and adopted his arguments. (ECF No. 52.)

Applying the *Tabron* test, the Court finds that Foat Leith fails to show that appointment of *pro bono* counsel is presently warranted. As the Court has not yet been presented with a proper record to determine whether the case should be barred by *Heck*, it presumes that the case has arguable merit. Nonetheless, on balance, the remainder of the *Tabron* factors weigh against appointing *pro bono* counsel at this time. Foat Leith has demonstrated an ability to sufficiently present her case, the issues do not appear to be complex, and the Court currently sees no great need for extensive fact investigation or expert testimony. Thus the only factors that weigh in Foat Leith's favor are her apparent inability to retain paid counsel and that the case's outcome, were it to proceed to trial, would likely depend largely on credibility determinations. The proceeding is not yet at that stage. In the event that a trial or adversarial hearing becomes necessary, the Court may *sua sponte* reconsider Foat Leith's application for *pro bono* counsel.

## VI. CONCLUSION

For the foregoing reasons, the pending motions in this action are resolved as follows:

Foat Leith's motion for default judgment against Dakin, (ECF No. 28), is DENIED.

Dakin's motion for vacatur of default and for dismissal of the Amended Complaint, (ECF No. 30) is GRANTED IN PART, insofar as the entry of default against Dakin, (ECF No. 26), is VACATED, Dakin's proposed Answer shall be deemed filed, and the claims for conspiracy and, to the extent asserted, malicious prosecution are DISMISSED WITHOUT PREJUDICE for failure to state a claim, and the motion is otherwise DENIED.

Weitz's motion to dismiss the Amended Complaint, (ECF No. 45), is GRANTED IN PART, insofar as the claims for conspiracy and, to the extent asserted, malicious prosecution are DISMISSED WITHOUT PREJUDICE for failure to state a claim, and the motion is otherwise DENIED.

Foat Leith's request for a hearing concerning recusal of Weitz's counsel, (ECF No. 48 at 5), which the Court construes as a motion to disqualify counsel, is DENIED.

Foat Leith's motion for appointment of *pro bono* counsel, (ECF No. 50), is DENIED WITHOUT PREJUDICE.

An appropriate order follows.

DATED:  May 24, 2018                                          /s/ Freda L. Wolfson
                                                             FREDA L. WOLFSON
                                                             United States District Judge